# BERWIND-WHITE COAL MINING COMPANY

*v.*

# BORINQUEN SUGAR COMPANY.

---

San Juan, Equity, No. 897.

ON REPORT OF SPECIAL MASTER AS TO DEFICIENCY SALE.

General Creditors' Bill—Mortgage.

    1. A sale under a general creditors' bill need not be made at the instance of the trustee of the bondholders.

General Creditors' Bill—Sale *en bloc*.

    2. It is a good ground of objection to a sale under general creditors' bill that the property, real and personal, was sold *en bloc*, without evidence that this prevented competition. *Non constat* that it was proper to sell the whole as a going concern.

Mortgage—After-acquired Property.

    3. The statement in a mortgage that the lien is to cover after-acquired property does not incorporate the property, when acquired afterwards, in the mortgage, under the mortgage law of Porto Rico, which requires the description to be recorded. Query, whether such a clause amounts to a contract for a mortgage on such property.

Agricultural Corporations—Exceeding Land Limit.

    4. The joint resolution of Congress approved May 1, 1900, pro-

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

vides that agricultural corporations are restricted to the ownership and control of not exceeding 500 acres of land. But the purchase at a mortgage sale by a committee of exceeding that amount of land does not violate this provision before reorganization.

Opinion filed March 5, 1915.

---

*Messrs. Savage & Francis* for excepting bondholders, etc.

*Mr. Jorge Dominguez* for purchasers.

HAMILTON, Judge, delivered the following opinion:

After the main sale in this case, the court rendered a decree for a deficiency judgment, and, upon application, on December 29, 1914, ordered the sale of property available for the purpose of satisfying this judgment. The master gave notice as directed, and on February 8, 1915, cried off the property *en bloc* to certain individuals making up what is called the reorganization committee of the Borinquen Sugar Company, for the sum of seventy-five thousand dollars ($75,000) and the assumption of preferred claims, bonds, and other encumbrances on the property sold.

The master filed his report on February 9, 1915, and certain exceptions of Ulman et al. were argued after the expiration of the twenty days for exception.

1. The first exception denies the jurisdiction of the court, because the foreclosure sale was not at the instance of the trustee of the bondholders. This exception, if valid at all, should have been made by the trustee of the bondholders, who

is the proper person to represent the mortgage, or some showing made that the trustee declines to act. It may be added that the sale in question is not one under the mortgage, but under the creditors' bill, and would not involve the question sought to be raised. This and similar matters have been disposed of on previous occasions, and it is admitted that the point is now raised merely for the sake of a consistent record. As it has been already raised, it may not be necessary for that purpose, but, being raised by this exception, the exception is overruled.

2. The second exception is that the sale of the properties *en bloc,* including real and personal, prevented competition, making it impossible for any other person than the reorganization committee to bid at the sale. No evidence whatever is presented to sustain this exception, which relates to a matter of fact. The way such points are usually presented is by an affidavit of an expectant bidder, showing that he would have offered a certain sum for a part of the property and was prevented in this case by the fact that the sale embraced other property also, which he did not want. Neither this nor any other form of proof is offered. Looking at the matter in the abstract, it is just as possible, if not more probable, that separating property used in the operation of a central would diminish the returns as a whole, even if it did increase the returns on some particular item. The one supposition is at least as likely as the other; but as no proof is offered either way, the exception must be overruled.

3. Another exception seeks to raise the point that the mortgage under which the exceptors claim to hold bonds covers the property sold, and that therefore they are injured by the

proceeding. Apart from the point above mentioned as to who should raise this question, the contention must rest upon the assumption that the statement in the mortgage that the lien is to cover after-acquired property amounts to an incorporation into the mortgage of this property when afterwards acquired. No authority is cited for this proposition, and it would seem to be contrary to the whole plan of the registry laws of Porto Rico. Art. 3 of the mortgage law reads in part as follows: "The notary shall draw up a document setting forth a description of the estates," etc., "in order that said document may be recorded." And art. 9 of the same law is in part as follows: "Every record made in a registry shall set forth the following details: 1. The nature, location, and bounds of the real property, the subject of record, or which is affected by the right to be recorded, and its area according to the standard used in the country and its equivalent in the metric decimal system, and the name and number of the estate, if shown in the instrument." This after-acquired property was not described and in point of fact it would have been impossible to describe it in advance. The clause may amount to a contract which is subject to specific performance. It is not perceived how it could amount to more, and it is not neessary to decide that it goes even so far. The exception is overruled.

4. The last exception claims that the purchase by the reorganization committee of the land mentioned in the report violates the joint resolution of Congress, approved May 1, 1900, as to the holding of land by corporations. That resolution is on this point as follows: "No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real state except such as may be rea-

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

sonably necessary to enable it to carry out the purposes for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land." [30 Stat. at L. 716.]

The point as at present raised is premature. This reorganization committee is in the first place not a corporation, and, in the second place, it will not be assumed by the court that it will handle the property illegally. How far the point can be raised by an individual, or whether it must be raised by the government alone, need not be discussed at this time. In any event, the exception is not well taken.

It follows therefore that an order must be entered overruling the exceptions and confirming the report, and it will be so ordered.